In re Thomas Mitchell DOUGLASS III & Teresa Lynn Douglass, Debtors.

Bankruptcy No. 87–00803–C–12.

United States Bankruptcy Court, W.D. Missouri, C.D.

Sept. 11, 1987.

Jerry W. Venters, Jefferson City, Mo., for debtors.

Dale Reesman, Boonville, Mo., for Fayette Land Co.

Larry M. Woods, Columbia, Mo., for Centerre Bank of Columbia.

FRANK W. KOGER, Bankruptcy Judge.

### MEMORANDUM OPINION

This Chapter 12 proceeding came on for hearing July 23, 1987 on confirmation. Substantial objections were made by Fayette Land Co., Centerre Bank and Commerce Bank. Those creditors, jointly and severally, raised three main objections. Initially, they assert that debtors do not

qualify for Chapter 12 because less than 80% of the scheduled indebtedness was farm oriented. Debtors owned a very substantial residence in an urban area which was not located on nor adjacent to their farm acreage. Also debtors owned a service station and related non-farm business, again neither on nor connected to the farming operation. The creditors maintain that any debts secured by deeds of trust on at least the service station property do not arise out of a farming operation. Debtors, on the other hand, allege that this property was inherited free and clear and that the deeds of trust were placed against it to acquire funds to keep farming. If the Court excludes the debt for the residence as directed by 11 U.S.C. § 101(17)(A) and rules that the debts secured by deeds of trust on the service station are not "arising out of a farming operation", then the numbers presented by the parties indicate that debtors do not qualify under the 80% farm arising debt rule of Chapter 12, § 101(17)(A).

■ As yet there are no cases under Chapter 12 that have explored this particular territory (or at least the Court has found none). Therefore, the Court is constrained to its own reasoning, as well as its understanding of statutory language in determining whether the creditors' position or the debtors' position is sounder. For several reasons, the Court believes that the debtors' position is more appropriate. The Court believes that it is (or should be) the reason or purpose for which the debt was incurred coupled with the use to which the borrowed funds were put that should be the criteria to determine whether the debt "arises out of a farming operation".

■ However, it also seems to the Court that where debt is secured by non-farm type property, it would be natural to consider it debt not arising out of a farming operation and thus the burden or responsibility of going forward with the evidence to show that the funds so generated were used in a farming operation devolves upon the debtor. To hold otherwise would not only cast the burden of proceeding upon the party with the least knowledge of the transaction but would also create a situation where that burden bearing party would in effect be striving to prove a negative, i.e., the funds were not used in a farming operation. To summarize then, debts secured by non-farm property may still "arise out of a farming operation" if they were actually procured for and used in the farming operation, but the burden of showing that purpose and that use rests upon the debtor.

■ In the present case, debtors' testimony as to the purpose of the loans and usage of the money that they procured from mortgaging the service station business property in the farming operation was sufficient to establish that said loans created debt "arising out of their farming operation". That point is, therefore, ruled against the creditors.

■ The next issue raised by the creditors was feasibility. Here the creditors had three thrusts: (1) loss of the wheat crop, (2) delay in planting the soy beans, and (3) lack of viable levees around the two farms, any of which they felt demonstrated lack of feasibility. It is necessary to explain briefly about debtors' farms to understand the creditors' concerns. Somewhere before 1954, the Missouri River created two islands (or probably more properly two peninsulas) whether thru accretion or avulsion was not established by the testimony. In any event, Raymond Lloyd purchased the new real estate, cleared it, and erected levees of about seven miles in length around the 660 acres. It was his testimony that the levees would protect the farmland up to a river level of 30 feet. It was also his testimony that without such levees, the farm would flood at an 18½ feet river level. It was his further testimony that with an 18½ foot flood level, it would be unlikely that any year would go by without the farm being flooded.

His testimony was buttressed by the testimony of Richard Basnett, a local banker who was familiar with the land, had seen it recently and noted the many breaks in the levees. Perhaps even more probative of the likelihood of flooding was the fact that debtors had suffered flood damage in 1985

and 1986 and had already lost their winter wheat crop in 1987.

Debtors' plan provided for $17,940.00 from the projected wheat harvest, but the evidence showed there would be none. Debtors' plan provided for $84,142.00 from the projected soybean harvest, but the creditors' testimony showed that the beans were planted extremely late and would, under no circumstances, make the yield debtor was projecting. Finally, all the evidence showed that the levees protecting the land had been seriously breached. It was undisputed that debtors did not have the money to repair the levees and their plan did not propose to repair same.

In view of this, the Court finds that debtors' plan is not feasible on its face, even if full credit is given to debtors' projections. Same were highly optimistic initially, but the uncontroverted loss of the income from the wheat crop alone was enough to swing the pendulum from highly optimistic to absolute blue sky impossible. The Court, therefore, refuses to confirm the plan.

In view of this ruling, the Court also concludes that it should grant relief from the automatic stay to the Fayette Land Company and the Centerre Bank of Columbia and ORDERS to that effect have been executed September 10, 1987.